IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-HC-2141-BO

| | |
|---|---|
| LARRY EAMES, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>TRACY JONES, Warden )<br>)<br>Respondent. )<br>_____ ) | O R D E R |

This matter is before the Court on Petitioner's writ for habeas corpus under 28 U.S.C § 2241 (DE # 1) and Respondent's Motion to Dismiss or in the Alternative, Motion to Transfer (DE # 9). The Court DENIES Respondent's Motions. The Court also ORDERS the Clerk to appoint Petitioner counsel.

## I. BACKGROUND

After a jury trial, the United States District Court of Arizona sentenced Petitioner on August 2, 1999 to 365 months imprisonment for his involvement in a fraudulent telemarketing scheme. Case No. 2:97-CR-237-ROS-2 (D. Az.). He was convicted of various counts of mail and wire fraud and conspiracy to commit such fraud. Relevant to this case, Petitioner was also convicted on ten counts of promotional money laundering and one count of conspiracy to promotionally launder money under 18 U.S.C. §1956. (Counts 47-57, 38).

A. Petitioner's Fraudulent Telemarketing Scheme

According to a published opinion regarding Petitioner's appeal, United States v. Johnson, 297 F.3d 845 (9th Cir. 2002), facts introduced at Petitioner's trial revealed the following:

In 1995, Petitioner Larry Eames and a co-defendant operated a telemarketing business known as American Eagle Advertising ("AEA") in Chamblee, Georgia. AEA was initially a legitimate business that sold magnetic business cards, pens, coffee mugs, and other advertising specialty items to solicited businesses. However, Petitioner and his co-defendant subsequently used the business to solicit money from individuals through a fraudulent telemarketing scheme. Johnson, 297 F.3d at 852.

The scheme involved calling individuals and running them through a "qualifying pitch," during which an AEA telemarketer would determine if the individual was a "mooch" —someone who would be susceptible to the scheme. In qualifying individuals, AEA focused on relatively isolated, elderly individuals who had demonstrated a past interest in telemarketing promotions. Once a person was qualified, AEA would call them back and tell them that they had won a prize that they could only collect if they purchased AEA ad specialty products. As the ad specialty products were worth a small fraction of the sale price, and the prizes did not exist, AEA realized significant profits on every transaction. Id. at 853.

AEA telemarketers especially targeted past purchasers, calling with the promise of larger and more certain prizes (that again did not exist). AEA would send out nominal prizes to these repeat purchasers — often gold coins — to foster a belief that large prizes were potentially available. In addition, AEA told these buyers that AEA could donate items to charity on the customer's behalf, thus creating an additional incentive to buy. Few gifts were ever donated to

charities, so charitable purchases raised AEA's profits. Id. Petitioner covered up this scheme in part by moving to Phoenix to open up a "front office" for the scheme. Id. at 854.

Over the 18-month life of the scheme, AEA took in more than 10 million dollars through roughly 1300 sales to over 300 individuals. This amounted to about $8.5 million in profit after AEA's direct expenses for the scheme. Id.

According to Petitioner, his convictions for promotional money laundering were all based on him using the gross receipts of the scheme to pay the scheme's direct expenses. These direct expenses were for office rent, the gold coins, customer leads, charity donations, and the businesses' payroll. Pl.'s Resp. at 3-4.

Subsequent to Petitioner's Convictions, the Supreme Court changed the substantive law regarding money laundering, which is retroactive on collateral review. United States v. Santos, 553 U.S. 507 (2008).

### B. United States v. Santos

In Santos, the Supreme Court addressed the meaning of the word "proceeds" in the money laundering statute, 18 U.S.C.A. § 1956. The Court specifically focused on promotional money laundering, contained in § 1956(a)(1) (A)(i):

> **(a)(1)** Whoever, knowing that the property involved in a financial transaction represents the *proceeds* of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the *proceeds* of specified unlawful activity--
>
> **(A)(i)** with the intent to promote the carrying on of specified unlawful activity...
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

(emphasis added).

Santos arrived in the Supreme Court on collateral review. Santos had run an illegal lottery and used its gross receipts to pay the business expenses of running the lottery. As a result, Santos was convicted of both gambling and money laundering. The Supreme Court vacated his money laundering conviction.

Justice Scalia, Souter, Thomas and Ginsburg's plurality opinion held that in prosecuting money laundering, the government must prove that the "proceeds" of the specified unlawful activity were profits and not just gross receipts. This is because the term "proceeds" is ambiguous, and the rule of lenity required interpreting the term in favor of defendants. Santos, 553 U.S. at 514. The plurality was also concerned about the "merger doctrine," as many crimes inevitably involve the use of the crime's gross receipts to pay for the crime's expenses:

> Few crimes are entirely free of cost, and costs are not always paid in advance. Anyone who pays for the costs of a crime with its proceeds-for example, the felon who uses the stolen money to pay for the rented getaway car-would violate the money-laundering statute. And any wealth-acquiring crime with multiple participants would become money laundering when the initial recipient of the wealth gives his confederates their shares. Generally speaking, any specified unlawful activity, an episode of which includes transactions which are not elements of the offense and in which a participant passes receipts on to someone else, would merge with money laundering.

Id. at 516.

Justice Stevens' concurrence disagreed that "proceeds" should always mean profits under § 1956. This was because Stevens' believed that § 1956's legislative history specifically showed that Congress intended the term "proceeds" to include gross revenues in prosecuting drug dealers. Stevens concluded however, that the "history sheds no light on how to identify the proceeds of many other types of specified unlawful activities," including Santos' illegal gambling. He thus concurred with the plurality vacating Santos' conviction. Id. at 526.

Additionally, Justice Stevens' concurrence relied on the merger doctrine:

> Allowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business. A money laundering conviction increases the statutory maximum from 5 to 20 years, and the Sentencing Commission has prescribed different Guidelines ranges for the two crimes...
>
> The revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not "proceeds" within the meaning of the money laundering statute. As the plurality notes, there is "no explanation for why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code, to radically increase the sentence for that crime."

Id. at 527-528.

Justice Stevens' opinion has caused much debate among the circuits as to the exact holding of Santos. Under Ninth Circuit interpretation of Santos, however, "proceeds" means "profits" anytime a money laundering charge would trigger a merger problem. United States v. Van Alstyne, 584 F.3d 803, 814 (9th Cir. 2009).

## C. Procedural Posture

Petitioner's first § 2255 motion challenged his counsel's effectiveness, and was denied on September 19, 2006. The Supreme Court subsequently decided Santos on June 2, 2008.

Petitioner then made a Santos claim under § 2255(h)(2) on February 9, 2009. The Ninth Circuit denied it on June 2, 2009 because the law under Santos was not a new constitutional right, as required to file a successive petition under § 2255; the appropriate remedy is instead a § 2241 petition.

Petitioner filed a § 2241 petition with this Court on November 9, 2009. There is no statute of limitations for a federal prisoner filing a § 2241 petition. See, e.g., Morales v. Bezy, 499 F.3d 668, 672 (7th Cir.2007).

## II. DISCUSSION

Petitioner states a plausible claim to have his money laundering convictions vacated pursuant to 28 U.S.C. § 2241.

A federal prisoner must collaterally attack his sentence through § 2255, unless the remedy provided by § 2255 is "inadequate or ineffective." 28 U.S.C. § 2255(e). This "inadequate or ineffective" clause is known as the "savings clause," and it permits federal prisoners to file successive habeas petitions pursuant to 28 U.S.C. § 2241. In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000).

In considering whether the savings clause will permit a petitioner to bring a second or successive petition pursuant to § 2241, the Fourth Circuit has developed the following three part test: (1) at the time of conviction, settled law of a circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law. Id. at 333-334.

Here, the Respondent acknowledges that Petitioner has met the third prong. The only issues are the first and second prong. The relevant law for these prongs is Ninth Circuit case law, as Petitioner was sentenced in the United States District Court of Arizona. At the time of Petitioner's conviction, the settled law of the Ninth Circuit established the legality of Petitioner's conviction, thus meeting the first prong. Subsequent to Petitioner's appeal and first § 2255, the Ninth Circuit interpreted Santos so that Petitioner's conduct likely no longer constitutes money laundering. Thus, the second prong is also likely met.

Although Congress amended §1956 after Santos to define proceeds as gross receipts, this amendment is inapplicable to Petitioner.

Therefore, the Court denies the Respondent's Motion to Dismiss. (DE # 9).

The Court also denies the Respondent's request to transfer this matter to the United States District Court of Arizona under the doctrine of forum non conveniens.

### A. First Prong: Settled Law in the Ninth Circuit

The Respondent does not dispute that Petitioner's case meets the first prong; the Respondent only argues that his pro se petition did not adequately address the first prong. The "settled law" prong, however, is not disputable in this case.

At the time of Petitioner's conviction in 1999, the settled law in the Ninth Circuit held "that gross receipts from a specified legal activity *always* satisfied the proceeds prong of § 1956." (emphasis added.) United States v. Van Alstyne, 584 F.3d 803, 813 (9th Cir. 2009) (finding Petitioner satisfied the "settled law" prong in his § 2241 petition asserting a Santos claim) (citing United States v. Akintobi, 159 F.3d 401, 403 (9th Cir.1998); United States v. Savage, 67 F.3d 1435, 1442 (9th Cir.1995)).

Thus, at the time of Petitioner's money laundering conviction, the settled law of the Ninth Circuit established the illegality of his conduct.

### B. Second Prong: Substantive Law Change Decriminalizing Petitioner's Conduct

Petitioner's conduct likely no longer qualifies as money laundering under the Ninth Circuit's interpretation of Santos. While the circuits are split in interpreting Santos, only the Ninth Circuit's case law is relevant for Petitioner.

The Ninth Circuit found that "[o]nly the desire to avoid a 'merger problem' united the five justices" in Santos. United States v. Van Alstyne, 584 F.3d 803, 814 (9th Cir. 2009) (vacating conviction on collateral review). Accordingly, the Court held that "proceeds" means "profits" anytime a money laundering charge would trigger a merger problem. Id. In the facts of Van Alstyne, the respondent was convicted of a Ponzi scheme that involved him selling stock in phony businesses and issuing distribution checks funded by the investors' principal, not actual returns. As this scheme inherently involved making payments to perpetuate the scheme, the Court found that the mail fraud charge merged with the money laundering charge. Accordingly, the Ninth Circuit vacated his money laundering conviction under Santos.

The Court recognized however, that "not all mail fraud schemes will involve payments that could implicate the 'merger' problem." Id. at 815. As an example, the Court pointed to another mail fraud scheme that hinged on the defendants' false attestations of compliance with a particular rule for bidding on tax liens that deprived competing bidders of a fair opportunity to participate in the auction. As the scheme required no "necessary payments," merger was not an issue. Thus the Court found that Santos analysis must focus on the concrete details of the particular scheme to defraud. Id.

Here, the Petitioner claims he was convicted of money laundering for paying the business expenses related to his fraudulent telemarketing scheme. He states that these payments were for office rent, prizes, customer leads, charitable donations, and his co-conspirators' salaries. Pl.'s Resp. at 3-4. These expenses were an inherent part of carrying on the scheme, and defining "proceeds" as "gross receipts" would necessarily implicate the merger problem here. Thus, assuming Petitioner's characterization of his convictions is accurate, Petitioner's conduct no longer constitutes money laundering under the Ninth Circuit's interpretation of Santos,.

8

The Respondent points to Fourth Circuit case law in support of its Motion to Dismiss. Gov.'s Mot. to Dismiss at 4. In two unpublished opinions,[1] the Fourth Circuit placed itself among the minority of circuits[2] in finding that the Santos holding only applies to illegal gambling. In contrast, most circuits align with the Ninth Circuit in taking a much broader view of Santos.[3] Regardless, the Respondent has conceded that the Ninth Circuit's interpretation of Santos is the applicable case law for Petitioner under the § 2241 three part test. Gov.'s Memo in Support of Mot. to Dismiss at 4,7. Fourth Circuit case law on this issue is thus irrelevant.

Therefore, assuming Petitioner's characterization of his convictions is accurate, Petitioner's case meets the second prong of the § 2241 three part test, as "subsequent to [Petitioner's] direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal." In re Jones, 226 F.3d at 333-334. Petitioner thus states a plausible claim for his right to have his money laundering convictions vacated.

---

[1] United States v. Howard, 309 Fed. Appx. 760 (4th Cir. 2009)( holding that jury instructions not in error in prosecution for conspiracy to launder prostitution proceeds, as Santos only establishes binding for an illegal gambling charge); United States v. Johnson, No. 09-4417, 2010 WL 5394842, at *4 (4th Cir. Dec. 23, 2010) (defining "proceeds" to mean "gross receipts" in mail and wire fraud case, because "the plurality opinion in Santos does not appear to extend beyond illegal gambling operations").

[2] The Eighth and Eleventh Circuits have held that Santos only applies to illegal gambling. United States v. Spencer, 592 F.3d 866, 879-80 & n. 4 (8th Cir.2010); United States v. Demarest, 570 F.3d 1232, 1242 (11th Cir.2009).

[3] Most circuits take a broad view of Justice Stevens' concurrence, although these views vary. The Third and Seventh Circuits have held that "proceeds" must be defined as "profits" any time the legislative history of the money-laundering statute does not affirmatively indicate otherwise. United States v. Lee, 558 F.3d 638, 643 (7th Cir.2009); United States v. Yusuf, 536 F.3d 178, 186 n. 12 (3d Cir.2008).

The First Circuit agrees with the Ninth Circuit, stating that "proceeds" must be defined as "profits" any time the "merger problem" would result if "proceeds" is defined as "gross receipts." United States v. Bucci, 582 F.3d 108, 123-24 (1st Cir.2009).

The Sixth Circuit has held that "proceeds" means "gross receipts" anytime the § 1956 predicate offense creates a merger problem that leads to a radical increase in the statutory maximum sentence and only when nothing in the legislative history suggests that Congress intended such an increase. " United States v. Kratt, 579 F.3d 558, 562 (6th Cir.2009) (emphasis added).

The Fifth Circuit has articulated a bifurcated analysis that considers the merger doctrine and legislative history. Garland v. Roy, 615 F.3d 391 (5th Cir. 2010).

C. Congressional Amendment

Congress's amendment of the money laundering statute in the wake of Santos is irrelevant to Petitioner's case.

After Santos, Congress amended the money laundering statute to define "proceeds" to include gross receipts of any unlawful activity, effective May 20, 2009. 18 U.S.C. § 1956(c)(9). This amendment only applies to conduct committed after its effective date, and courts have held it inapplicable when collaterally reviewing convictions that occurred before then. See, e.g., Van Alstyne, 584 F.3d at 813, n. 12 ("Our task [for collateral review] is to determine how the Santos Court would interpret "proceeds" with respect to mail fraud committed prior to the statute's amendment in May 2009"); Garland v. Roy, 615 F.3d 391 (5th Cir. 2010) (applying Santos and disregarding congressional amendment on collateral review since conviction for money laundering occurred prior to amendment's effective date).

D. Transfer under Doctrine of Forum Non Conveniens

The Court denies the Respondent's request to transfer this matter to the United States District Court of Arizona.

The Respondent argues that under the doctrine of forum non conveniens in 28 U.S.C. § 1404(a), Petitioner's original sentencing court should hear this matter as they are more familiar with the facts of the case and the applicable law.

This Court has proper jurisdiction over this case, as the Petitioner is imprisoned at the Butner Federal Correctional Complex. See Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004).

Transfer under the doctrine of forum non conveniens is entirely within the Court's discretion. § 1404(a). This Court is fully capable of analyzing the law and facts of this case.

Respondent's Motion is thus denied.

### III. CONCLUSION

The Court DENIES Respondent's Motion to Dismiss and Respondent's Motion to Transfer (DE # 9). The Court also ORDERS the Clerk to appoint Petitioner Counsel.

SO ORDERED, this 10 day of March, 2011.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE